

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TAX-RIGHT, LLC,

    Plaintiff,

v.                                  Civil Action No. 3:12cv657

SICPA PRODUCT SECURITY, LLC,

    Defendant.

**MEMORANDUM OPINION**

For the reasons set forth in this Memorandum Opinion, defendant SICPA Product Security's ("SICPA") MOTION TO STRIKE THE CLAIM CONSTRUCTION DECLARATION OF INVENTOR MARK NEUWIRTH, AND IN THE ALTERNATIVE THAT TAX-RIGHT HAS WAIVED THE ATTORNEY/CLIENT PRIVILEGE WITH RESPECT TO THE PROSECUTION OF THE '614 PATENT (Docket No. 49) was denied by the Order dated June 26, 2013 (Docket No. 67).

**INTRODUCTION**

This is a patent infringement action brought by Tax-Right, LLC, ("Tax-Right") against SICPA, pursuant to 35 U.S.C. § 271, and alleging that SICPA made, used, offered for sale and/or sold systems that infringe the claims of U.S. Patent No. 7,704,614 ("the '614 patent"), which is owned by Tax-Right.

On May 31, 2013, during a telephonic conference between the parties and the Court, counsel for Tax-Right indicated that they intended to introduce evidence from the inventor of the patent,

Mr. Mark Neuwirth ("Neuwirth"), during the <u>Markman</u> hearing in this action. <u>See</u> (Tr. of May 31, 2013 (Docket No. 51) at 12:9-23). Subsequently, on June 6, 2013, SICPA filed this motion to strike Neuwirth's declaration or, in the alternative, to find that attorney-client privilege had been waived (Docket No. 49). The declaration at issue ("Neuwirth Declaration"), attached as Exhibit 1 to the motion, was attached as Exhibit 5 to Tax-Right's Claim Construction Brief (Docket No. 60) filed on June 21, 2013. A response to the motion to strike was filed (Docket No. 57) as was a reply thereto (Docket No. 66). By Order dated June 26, 2013 (Docket No. 67), the Court denied the motion.

## DISCUSSION

"Claim construction begins with the language of the claim." <u>Power Integrations, Inc. v. Fairchild Semiconductor, Intern., Inc.</u>, 711 F.3d 1348, 1360 (Fed. Cir. 2013). "[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." <u>Johnson Worldwide Assocs., Inc. v. Zebco Corp.</u>, 175 F.3d 985, 989 (Fed. Cir. 1999). A claim's terms must be interpreted "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence." <u>Teleflex, Inc. v. Ficosa North America Corp.</u>, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "Where the intrinsic record is ambiguous,

2

and when necessary, [the Court may] rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Power Integrations, Inc., 711 F.3d at 1360 (internal quotations omitted).

The Federal Circuit has explained that "[n]o inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit. The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)." Markman v. Westview Instruments, Inc., 52 F.3d 967, 985 (Fed. Cir. 1995). However, that court has gone on to explain that,

> This court in Markman did not hold that the inventor can not explain the technology and what was invented and claimed; the Federal Circuit held only that the inventor can not by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted.
>
> Patents are written not for laymen, but for and by persons experienced in the field of the invention. An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims. The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems. Although Markman and other precedent caution the court against creative reconstruction of

3

> an invention by interested persons, courts are not novices in receiving and weighing expertise on both sides of an issue.

Voice Tech. Group, Inc. v. VMC Sys., Inc., 164 F.3d 605, 615-616 (Fed. Cir. 1999). Of course, the testimony of the inventor is entitled to no particular deference when he testifies "as to how the patent should be construed based on the text of the patent." Markman, 52 F.3d at 983. When the inventor testifies in that manner, the testimony "amounts to no more than legal opinion . . . Thus, as to these types of opinions, the court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it." Id. The Court must bear in mind that "the testimony of an inventor . . . concerning claim construction . . . often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application." Bell & Howell Document Management Prod. Co. v. Altek Sys., 132 F.3d 701, 706 (Fed. Cir. 1997).

SICPA sought to strike the Neuwirth Declaration on the basis that it "only provides [Neuwirth's] unsupported and uncorroborated subjective opinion of what he recalls he thought his invention was and what he meant when he used certain terms." (Def. Br. in Supp. of Mot. to Strike (Docket No. 50) at 4). SICPA challenges the usefulness of Neuwirth's opinion on the ground that, as the Federal Circuit recognized in Bell & Howell,

4

an inventor's testimony is often self-serving and runs the risk of purporting to act as his own, after-the-fact, lexicographer by retroactively defining the terms as they were used in the patent.

Tax-Right responds that, under Federal Circuit decisional law, inventor testimony is admissible, even if it is suspect. (Pl. Br. in Opp. (Docket No. 57) at 3 ("Thus, the true issue is not whether Mr. Neuwirth's declaration and testimony may be received by the Court, but the weight to be accorded to his testimony in view of the entire record.")). Tax-Right notes that the issue, at this stage, "is not whether, ultimately, the Neuwirth declaration and testimony are necessary to the claim construction issues. Rather the issue is if it is proper for the Court to exclude them." (Id. at 1 n.1).

The Court has reviewed the Neuwirth Declaration in perspective of the arguments presented in the papers. The Neuwirth Declaration consists, in relevant part, of Neuwirth's attempt to explain "the invention and what was intended to be conveyed by the specification and covered by the claims." Voice Tech. Group, 164 F.3d at 614. Neuwirth purports to provide this information based on the realization that, at the time of the patent, Neuwirth was aware that "people might interpret [words in the claims] different" and that he wanted to make sure his "invention was widely applicable in the distribution industry."

5

(Neuwirth Decl. ¶¶ 28-29). That is, Neuwirth is attempting to provide extrinsic evidence to assist in construing ambiguous claim terms. See Power Integrations, Inc., 711 F.3d at 1360 ("Where the intrinsic record is ambiguous, and when necessary, we have authorized district courts to rely on extrinsic evidence."). Such extrinsic evidence has, historically, included inventor testimony. Markman, 52 F.3d at 980 ("Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.").

Of course, it may well be the case that Neuwirth's declaration and testimony are of little use to the Court in construing the claims. It may be that the Court need not consider extrinsic evidence; it may be that Neuwirth's testimony is unpersuasive. However, those are questions of weight and not of admissibility. And, indeed, as the Federal Circuit has noted, the Court is not unfamiliar with weighing testimony. See Voice Tech. Group, 164 F.3d at 616 ("[C]ourts are not novices in receiving and weighing expertise on both sides of an issue.").

Accordingly, the Court will deny the motion to the extent that it seeks to strike the Neuwirth Declaration.

In the alternative, SICPA asks that Court to find that Neuwirth has waived attorney-client privilege with respect to his communications with his patent attorney regarding the

6

preparation of the patent application because, in SICPA's estimation, the Neuwirth Declaration discloses the content of some of those communications. SICPA argues that the Neuwirth Declaration creates an "at issue" waiver of attorney-client privilege in which the declaration "places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." In re Lott, 424 F.3d 446, 453 (6th Cir. 2005). In SICPA's view, Neuwirth's statements about what the terms meant, and about his realization that some of the terms may be ambiguous, demonstrates a situation in which Neuwrith "asserts a claim . . . and attempts to prove that claim . . . by disclosing or describing an attorney-client communication." Rhone-Poulenc Rorer Inc. v. Home Idem. Co., 32 F.3d 851, 863 (3d Cir. 1994). As a general rule, then, "the attorney-client privilege is . . . waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1175 n.1 (7th Cir. 1995).

Tax-Right responds that there has not been a disclosure of privileged communication and that, therefore, there is no issue of waiver. (Pl. Br. in Opp. at 4). Tax-Right concedes that an "at issue" waiver may exist, but denies that it is present here, asserting that "the substance of Mr. Neuwirth's declaration is

7

his explanation of his understanding, as the inventor and one of skill in the art, of the claim terms in the '614 patent." (Id. at 5).

The Neuwirth Declaration does not disclose any privileged communications. The entire sum of the references to Mr. Natter, beyond acknowledgement that they had worked together (Neuwirth Decl. ¶¶ 23 & 26), is a reference to the fact that "when [he] worked with Mr. Natter to draft the Tax-Right patent, [Neuwirth] realized that people might interpret the word 'order' differently." (Neuwirth Decl. ¶ 28). This simply does not constitute "plac[ing] the advice of the attorney in issue" in the litigation, Rhone-Poulenc Rorer Inc., 32 F.3d at 863, nor does Neuwirth appear to be "disclosing favorable communications while asserting the privilege as to less favorable ones." In re Seagate Technology, LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007). Indeed, Neuwirth does not appear to disclose any communications (privileged or otherwise) at all.

Accordingly, the Court finds that the attorney-client privilege has not been waived and will further deny SICPA's motion in that respect as well.

## CONCLUSION

For the reasons set forth above, defendant SICPA Product Security's ("SICPA") MOTION TO STRIKE THE CLAIM CONSTRUCTION DECLARATION OF INVENTOR MARK NEUWIRTH, AND IN THE ALTERNATIVE

8

9

THAT TAX-RIGHT HAS WAIVED THE ATTORNEY/CLIENT PRIVILEGE WITH RESPECT TO THE PROSECUTION OF THE '614 PATENT (Docket No. 49) was denied by the Order dated June 26, 2013 (Docket No. 67).

It is so ORDERED.

                                          /s/            REP
                                    Robert E. Payne
                                    Senior United States District Judge

Richmond, Virginia
Date: July 18, 2013